UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BRYAN GIPSON,

    Plaintiff,

v.

MARK FERGUSON,
TAWAS POLICE AUTHORITY,
CITY OF EAST TAWAS,
CITY OF TAWAS CITY

    Defendants.
_____/

Case No. 18-11380
Honorable Thomas L. Ludington

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

On May 2, 2018, Plaintiff Bryan Gipson filed a complaint against Defendants City of East Tawas, City of Tawas City, the Tawas Police Authority (TPA), and TPA Chief Mark Ferguson. ECF No. 1. He filed an amended complaint on June 18, 2018, asserting claims of discrimination and retaliation under the American's with Disabilities Act (ADA), 42 U.S.C. §§ 12101 (Count I), as well as the Michigan Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1103 (Count II). ECF No. 13. Plaintiff was a police officer for TPA, a joint police force created by the neighboring cities of East Tawas and Tawas City.

Plaintiff alleges that, after he was injured in a car accident, his supervisor, Chief Mark Ferguson, prevented him from returning to full duty by making him take an unreasonable Functional Capacity Evaluation (FCE) and by increasing the physical requirements of Plaintiff's job description as a police officer for TPA.

After approximately six months of discovery, Defendants filed three independent motions for summary judgment. ECF No. 22 (City of East Tawas); ECF No. 23 (Mark Ferguson, TPA);

ECF No. 28 (City of Tawas City). Plaintiff responded on March 8 (ECF Nos. 33, 34, 35), and Defendants replied on March 19 and March 22. ECF Nos. 39, 41, 42.[1]

**I.**

In 1995, the City of East Tawas and the City of Tawas City created an intermunicipal police authority known as the Tawas Police Authority (TPA) pursuant to MCL 123.814, which grants municipalities the authority to enter into "mutual police assistance agreements" and create intermunicipal police forces. Article XI of the TPA Articles of Incorporation provides that "The Authority shall be an independent employer, and all employees thereof shall be subject to the terms and conditions of employment as established by the Authority. Employees of the Authority shall not be deemed to be employees of the constituent municipalities."

Plaintiff was hired by defendant Tawas Police Authority (TPA) as a police officer in May 2013. Plaintiff worked without incident until he was involved in a motor vehicle accident on January 7, 2015. Plaintiff was off duty when his car was struck from behind by a truck. He was taken to Mercy Hospital in Grayling, where he was treated for lumbar and cervical spasms and released the same day. ECF No. 33-4.

As a result of his injuries from the motor vehicle accident, Plaintiff remained off work until August 2, 2015. After some initial physical therapy, he was referred to Dr. Richard Ball, a physician at Neuromuscular Rehabilitation Associates of Northern Michigan. The treatment was apparently successful, and Plaintiff returned to work with no restrictions on August 2, 2015. ECF No. 33-5. In September 2015 Dr. Ball added a restriction of no "swing shifts." In November 2015 Dr. Ball added a restriction of no lifting greater than 25 pounds. *Id.* Plaintiffs supervisor, TPA police Chief Mark Ferguson, testified that he was able to accommodate those restrictions.

---

[1] Although the parties briefed three independent sets of summary judgment motions (for a total of 9 briefs), the briefs mostly cover the same issues.

Ferguson Dep. at 22-24, ECF No. 33-6.

Plaintiff was able to return to full duty work as a police officer from August 2, 2015 until August 8, 2016. At that time, Plaintiff began experiencing problems with his back again, and had to take time off work for aquatic physical therapy and to consider a possible sacroiliac fusion by an orthopedic surgeon. Gipson Dep. at 53-55 ECF No. 33-2. Plaintiff's condition improved and he chose not to have the surgery. After discussions with Chief Ferguson and consultation with his doctors, Plaintiff was able to return to work in a light duty position on December 26, 2016. Plaintiff's union and the TPA executed a Letter of Understanding setting forth the terms of Plaintiffs return to light duty employment. Gibson Dep. at 55-57.

Plaintiff required some accommodation for his work hours and shifts. Because he was still not sleeping well, he needed to avoid swing shifts. Chief Ferguson was able to accommodate the restriction. *Id.* at 71-74. In March of 2017, Plaintiff began talking with Chief Ferguson about returning to full duty. Chief Ferguson expressed an interest in having Plaintiff complete physical testing. *Id.* at 74-76. The TPA labor attorney, Michael Kluck, suggested that Plaintiff be given a Functional Capacity Evaluation (FCE). Ferguson Dep. at 46. In March of 2017, Chief Ferguson revised the TPA Police Officer Job description which, for the first time, listed descriptions of physical demands of the job including lifting and moving items of "heavy" weight, as well as running, climbing, balancing, and other "strenuous tasks requiring muscular strength and coordination and cardiovascular endurance." ECF No. 33-9.

The FCE was conducted over two days on June 19-20, 2017, and the occupational therapist conducting the FCE concluded that Plaintiff was capable of returning to full duty without restrictions. ECF No. 33-12. Plaintiff testified that, before the FCE, he was feeling the best he ever felt and that he was confident he could perform his job duties without

accommodation. Gipson Dep. at 132-35. However, he testified that the FCE required him to do tasks that were unnecessary for his job, including lifting heavy weights, which exacerbated his back condition. *Id.* He returned to work for one week following the FCE but was forced to take off work again because his back condition became worse. He has not returned to work since that time. None of the parties have explained when and how Plaintiff's employment came to an end.

**II**.

**A**.

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). "The party opposing summary judgment cannot rest on its pleading or allegations, to prevail, they must present material evidence in support of their allegations." *Leonard v. Robinson*, 477 F.3d 347 (6th Cir. 2007) (citing *Celotex Corp v. Catrett*, 477 U.S. 317 (1986)). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

**B**.

Under the ADA, in the absence of direct evidence of disability discrimination, a plaintiff may seek to establish a prima facie case of discrimination based on circumstantial evidence.

Once established, a prima facie case shifts the burden to the employer to offer a legitimate, nondiscriminatory reason for its action. If the employer articulates such a reason, the plaintiff must then show that the reason given by the employer is pretextual in order to prevail. 42 U.S.C. §§ 12101 *et seq.; See also Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1178, 1184–86 (6th Cir.1996), and *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

To establish a prima facie case of discrimination under the ADA, a plaintiff must show that he is (1) a disabled person within the meaning of the Act, (2) that he is otherwise qualified to perform the essential functions of his job with or without reasonable accommodation, and (3) that he suffered an adverse employment decision due to his disability. *See McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 371 (6th Cir.1997).

## C.

The ADA's prohibition on retaliation prevents an employer from "discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . . under [the ADA]." 42 U.S.C. § 12203(a). To make out a case of retaliation, a plaintiff must show: "(1) that he engaged in protected activity; (2) that he suffered adverse employment action; and (3) that a causal connection existed between the protected activity and the adverse action." *Penny v. United Parcel Serv.,* 128 F.3d 408, 417 (6th Cir.1997).

## III.

Defendant City of East Tawas argues: 1) that Plaintiff failed to exhaust administrative remedies against it because he did not name the "City of East Tawas" in his EEOC charge; 2) that the TPA, and not the City of East Tawas, is Plaintiff's employer; 3) that the TPA, East

Tawas, and Tawas City do not qualify as a single entity for the purpose of aggregating their number of employees to meet the 15 employee threshold under the ADA, 42 U.S.C. § 12111(5)(A); 4) that the FCE requirement was proper; 5) that Plaintiff's ADA claims fail on their merits because Plaintiff cannot meet one or more elements of his prima facie case for retaliation and discrimination. ECF No. 22.

Defendants Ferguson and the TPA filed a joint motion for summary judgment, in which they similarly argued 1) that the TPA does not meet the 15-employee threshold and that the TPA is not a joint entity with East Tawas and Tawas City for the purpose of aggregating their employee numbers; 2) that the FCE requirement was proper; and 3) that Plaintiff's ADA claims fail on their merits. ECF No. 23. They also argue that Defendant Ferguson is entitled to qualified immunity. Defendant Tawas City also filed its own motion for summary judgment. ECF No. 28. Tawas City's motion did not raise any novel defenses that weren't already briefed in the other two motions.

It is important to note that Defendant Ferguson only presents merit-based defenses, namely that Plaintiff cannot meet his prima facie cases for discrimination and retaliation, and that Defendant Ferguson is entitled to qualified immunity. The qualified immunity defense also requires a merit-based analysis, as the first step to determining the existence of qualified immunity is to determine whether a violation of Plaintiff's federal rights has occurred. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Defendant Ferguson does not argue that he cannot be held liable as an individual under the ADA's anti-discrimination and anti-retaliation provisions.[2] He does not argue that Plaintiff failed to exhaust administrative remedies against him. Nor does he argue

---

[2] Under 42 U.S.C. 12111(5)(A), "the term 'employer' means a person." The term " 'person' includes one or more "individuals, governments, governmental agencies . . ." 42 U.S.C. 12111(7). Other circuits have held that there is no basis for individual liability under the ADA. *See Albra v. Advan, Inc.,* 490 F.3d 826 (11th Cir. 2007); *Spiegel v. Schulmann*, 604 F.3d 72 (2d Cir. 2010). The parties did not cite this case law or any Sixth Circuit case law, nor did they brief the issue of individual liability.

that his individual liability is dependent on the existence of the TPA's entity liability. In other words, Defendant Ferguson does not explain whether or how TPA's defenses to entity liability apply to him as an individual defendant. Thus, the merits of Plaintiff's ADA claims must be addressed because neither Plaintiff nor Defendant Ferguson offers any alternative means for addressing Plaintiff's claims against Defendant Ferguson. Because the merits analysis is resolvable against the Plaintiff, and because that analysis is equally applicable to Plaintiff's claims against the municipal entities[3], there is no reason to address the non-merits-based defenses of the municipal entities.[4]

## IV.

Plaintiff cannot establish a prima facie case of discrimination because he is not "otherwise qualified to perform the essential functions of his job with or without reasonable accommodation." *See McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 371 (6th Cir.1997). Indeed, Plaintiff's testimony unmistakably conceded that fact:

> Q. So this pain, this constant pain that you have in the lower right side of your back, how does it limit your physical abilities?
>
> A. Well, it's hard to stay in on – like sit on my butt fully. Bending. Twisting. Stepping. Walking upstairs. I mean just movements. Laying on it.
>
> Q. So you said it's hard –
>
> A. Picking up things
>
> . . .

---

[3] Plaintiff does not allege any independent conduct of the three municipal entities in this case that violated his rights under the ADA. Rather, he alleges that Defendant Ferguson's actions were undertaken with the "advise, consent, and knowledge" of the three municipal entities and that those three entities are "liable for the wrongful actions of Chief Mark Ferguson under the legal doctrine of *respondeat superior*." Am. Compl. ¶¶ 6, 13.

[4] These non-merit-based defenses include: 1) that Plaintiff failed to exhaust administrative remedies against the entities by only naming "Tawas Police" in his EEOC charge; 2) that the City of Tawas City and the City of East Tawas are not Plaintiff's employer; and 3) that the TPA is not a covered entity under the ADA because it has fewer than 15 employees and is independent of the two municipalities.

Q. So you had said, you know: I can't be a police officer. I'm physically injured. I know the duties of the job are very demanding. So what duties of the job are you unable to perform as we're sitting here today?

A. Well, for one, they're long hours. Are you asking me physically or mentally?

Q. Physically first. When you say long hours, I would assume that you would likely have difficulty sitting in a patrol car for an extended period of time?

A. With the duty gear that we have to wear, yes, correct.

Q. By duty gear, you're talking about the duty belt, the bullet proof vest, all of that would cause you discomfort?

A. Correct.

Q. I interrupted you. I apologize. What else couldn't you perform.

A. Well, physically make an arrest. I mean you never know what is going to happen when you're at work. You are constantly doing different things every day. Going, you know, you could have to chase somebody up and down stairs. Could get into a physical altercation. Getting in and out of the car constantly, regularly.

. . .

Q. You had mentioned that that is the physical component, as far as the reasons why you're unable to perform the duties of a police officer. Is there a mental component that you believe exists today that prevents you from working as a police officer as well?

A. Yeah.

Q. Tell me about that.

A. My thought process. My way that I am like very forgetful at times. I'm very depressed and just full of anxiety. The job is really stressful and you need to be able to think quickly. I feel like I'm very slow compared to what I was. That work environment there, thinking about that really is not safe and comfortable for me.

Q. So would it be fair to state that – as we're sitting here today – as you think about your current mental state, if you were in the position of a

police officer – and you often times have to make split second potentially life saving or life threatening decisions – that as you're sitting here today, you don't feel capable of doing that safely?

A. Absolutely not.

Q. So backing up a bit. We talked about why you cannot perform the essential functions of a police officer as you sit here today. Let's go back to July of 2017. The last date that I understand you work was – was it July 3rd, 2017, approximately?

A. It was in July, yes. The beginning of July. I don't know what date.

Q. So let's go with – we'll just say early July, 2017. You haven't worked since then. In July of 2017, were your physical restrictions essentially the same as they are today?

A. No.

Q. Were they worse?

A. They were worse.

Q. They were worse?

A. Yes. My physical restrictions were worse that day.

Q. So would it be fair to state that in July, 2017, when you went off work, you were physically unable to perform the essential functions of a police officer at that time?

A. Correct.

. . .

Q. Since you went off work in July of 2017, it's my understanding from your testimony you have not asked Tawas Police Authority for any accommodations; is that correct?

A. Since July of 2017?

Q. Yes.

A. That's correct.

> Q. And that is true because as you have described to me, related to your physical limitations, that there aren't any accommodations that they could do for you that would physically allow you to do the job of a police officer, correct?
>
> A. Correct.

Gipson Dep. at 32-38, ECF No. 22-3.

Plaintiff explains as follows in his response brief:

> Plaintiff admits that he was incapable of performing the essential functions of his job AFTER he left work on July 3, 2017, but he also testified that he would have been capable of returning to full duties as a police officer, but for the aggravation of his back condition caused by the excessive physical tasks required by the FCE.

ECF No. 33 at 18.

Plaintiff also emphasizes several times that Chief Ferguson is responsible for Plaintiff re-injuring his back because he required Plaintiff to undertake an FCE involving excessive physical tasks. Importantly, Plaintiff's claim here is not for a worker's compensation benefit for an injury sustained during his employment, nor does the injury appear to have any relevance to his claim for ADA discrimination. Plaintiff admits that, as of when he left the position, he was incapable of performing the essential functions of the job, with or without accommodation, and remains incapable of doing so. The fact that he was at one point capable of performing the essential functions of his job, or would have been capable but for certain occurrences, or that Chief Ferguson is at fault for his subsequent injury, are not relevant considerations in determining whether Plaintiff has met his prima facie case for disability discrimination under the ADA.

Moreover, Plaintiff has identified no evidence that he was subject to an adverse employment action, which prevents him from meeting the elements of his prima facie case for discrimination and retaliation. The parties do not explain when or under what circumstances Plaintiff's employment came to an end. Plaintiff does not, however, contend that he was

terminated, demoted, or that his employer otherwise took any formal action with respect to his employment. Rather, he simply states that, after the FCE, "he worked for about one week" and that "he has been unable to work as a police officer since July 3, 2017." ECF No. 33 at 7.

Plaintiff does not address the adverse action requirement of his prima facie case. It is difficult to encapsulate the overarching arguments set forth in Plaintiff's response briefs or how they relate to the legal elements of his claims. Plaintiff explains as follows:

> Plaintiff's Complaint Paragraph 14 alleges that Chief Ferguson, with the knowledge and consent of the other Defendants, retaliated against him for his exercising his rights under the ADA, and subjected him to the FCE, in violation of the ADA, citing 42 U.S.C. §12203 and § 12112. (Plaintiff's First Amended Complaint and Jury Demand, ECF No.13, p. 3.)
>
> 42 U.S.C. §12112(d)(4)(A) states:
>
>> **A covered entity shall not require a medical examination** and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, **unless such examination or inquiry is shown to be job-related and consistent with business necessity.** (Emphasis added)
>
> The requirement that any such examinations or tests be job-related and consistent with business necessity is repeated in the regulations. See 29 C.F.R. Part 1630.7, 1630.10, and 1630.14(c). Also see the EEOC Enforcement Guidance: Disability-Related Inquiries and Medical Examinations of Employees under the ADA, attached as Exhibit 14.
>
> Contrary to Defendant's argument, Plaintiff does not need to prove that he is disabled under the ADA to contest the FCE, which, according to Plaintiff, was not consistent with his job duties. *See Lee v. City of Columbus,* 636 F.3d 245, 252 (6th Cir. 2011), and the cases cited therein. In *Kroll v. White Lake Ambulance Auth.,* 763 F.3d 619, at 623 (6th Cir. 2014), the Sixth Circuit held that the employer has the burden of proving that a medical examination contested under 42 U.S.C. 12112(d)(4) is job-related and consistent with business necessity. The business necessity standard cannot be satisfied by an employer's bare assertion that a medical examination was merely convenient or expedient. The decision-maker ordering the examination must have a reasonable belief based upon objective evidence that the employee's behavior threatens a vital function of the business. *Ibid.,* at 763 F.3d 623. See also *Bates v. Dura Auto. Sys., Inc.,* 767 F.3d 566, at 571-4 (6th Cir. 2014).

It is unclear whether Plaintiff is arguing 1) that Chief Ferguson's decision to require an FCE is independently actionable; or 2) that the decision to require an FCE somehow corroborates the elements of Plaintiff's claims for discrimination and retaliation. Plaintiff has provided some legal support for the proposition that a violation of 42 U.S.C. 12112(d)(4)(A) (unjustified medical inquiries by the employer) is independently actionable.[5] However, Plaintiff has not pled such a claim. Rather, he has only pled claims for discrimination and retaliation, both of which require him to demonstrate that he was subject to an adverse action.

Plaintiff has not provided any legal support for the proposition that the decision to require a medical examination can *itself* constitute an adverse employment action independent of any other action taken by the employer with respect to his employment. The case he cites is inapposite. In *Kroll*, after the employee "had a personal altercation with one of her co-workers, her supervisor expressed concern regarding her 'immoral' sexual conduct and demanded that she undergo psychological counseling. *When Kroll refused, she was fired*." *Kroll v. White Lake Ambulance Auth.*, 763 F.3d 619, 620 (6th Cir. 2014) (emphasis added).

Here, by contrast, Plaintiff did not refuse to take the FCE, nor was he fired. If that had occurred, that would likely have constituted an adverse action. Similarly, if he had failed the FCE and his employer had demoted him or relegated him back to light duty work, that too would likely have qualified as an adverse action. That did not occur either, however. To the contrary, Plaintiff took the FCE and passed the FCE. The occupational therapist cleared him for full duty work, his employer cleared him for full duty work, and he did indeed return to full duty work. Then, one week later, Plaintiff made his own determination that his back pain was too

---

[5] *See Lee v. City of Columbus,* 636 F.3d 245, 252 (6th Cir. 2011) (citing *Harrison v. Benchmark Elecs. Huntsville, Inc.,* 593 F.3d 1206, 1214 (11th Cir.2010) ("[A] plaintiff has a private right of action under [§ 12112(d) ], irrespective of his disability status.")).

debilitating to continue working. On these facts, there is no reason to address whether the FCE was job-related or consistent with business necessity, because the employer took no adverse action in reliance on the FCE results.

> Finally, Plaintiff argues as follows:
>
> Plaintiff testified that Chief Ferguson said he was going to order the FCE because he felt Plaintiff was a liability and didn't feel he was capable of his job duties. (Deposition of Bryan Gipson, Exhibit 1, pp. 62-3.) This is direct evidence that Chief Ferguson's modification of the job description and requirement of the FCE is causally connected to the Plaintiff's disability. There is no dispute that Chief Ferguson changed the job description as part of his decision to have Plaintiff perform the FCE. (Deposition of Mark Ferguson, Exhibit 4, pp. 50-53 .) Plaintiff also noted that Chief Ferguson's attitude changed towards him after making a request of day shift only accommodation. (Deposition of Bryan Gipson, Exhibit 1, pp. 86-88, 133-4.)
> When Plaintiff was performing light duty work from December 26, 2016 to June 2017, it is undisputed that he was engaging in protected activity by asking for accommodations at a time when he was a qualified individual with a disability. Given the transparency of Chief Ferguson's wishes to change the job description and have a FCE performed, it is clear that he took those actions because of Plaintiff's disability. Under these circumstances, whether Chief Ferguson retaliated against Plaintiff is a question of fact for the jury to decide.

Here, Plaintiff addresses the "protected activity" and "causal connection" elements of his retaliation claim. Again, however, he neglects to address the adverse action element. To the extent Plaintiff is arguing that Chief Ferguson's conduct is direct evidence of retaliation[6], the argument is without merit. Direct evidence is evidence which, if believed, conclusively resolves the matter at issue; it does not require any inferences beyond that the evidence be believed. *See Trans World Airlines v. Thurston*, 469 U.S. 111, 121 (1985). If Plaintiff's testimony is true, and Chief Ferguson did indeed say he wanted to order an FCE because he felt Plaintiff was a liability who was incapable of performing his job duties, that evidence in no way resolves the matter at

---

[6] If a Plaintiff identifies direct evidence of discrimination or retaliation, the *McDonnel Douglas* burden shifting framework does not apply. *See Trans World Airlines v. Thurston*, 469 U.S. 111, 121 (1985) ("The shifting burdens of proof set forth in McDonnell Douglas are designed to assure that the plaintiff [has] his day in court despite the unavailability of direct evidence.") (alteration in original) (citation omitted).

issue. There is nothing inherently retaliatory about ordering an FCE for an employee who the supervisor believes is at medical risk when performing his job duties or is incapable of performing his job duties.

Plaintiff has identified no direct evidence of discrimination or retaliation. He cannot meet his prima facie case of discrimination because he acknowledges that he is not capable of performing the essential functions of his job nor was he capable of doing so at the time he left the position. Moreover, he cannot meet his prima facie case for discrimination or retaliation because he has identified no adverse employment action. Accordingly, his discrimination and retaliation claims against Chief Ferguson must be dismissed. Because this analysis is equally applicable to the discrimination and retaliation claims against the three municipal entities, those claims will be dismissed as well.[7] Thus, as explained above, there is no reason to analyze the other defenses raised by the municipal Defendants.

V.

Accordingly, it is **ORDERED** that Defendants' motions for summary judgment, ECF Nos. 22, 23, 28, are **GRANTED**.

It is further **ORDERED** that the amended complaint, ECF No. 13, is **DISMISSED** with prejudice.

                                                  s/Thomas L. Ludington
                                                  THOMAS L. LUDINGTON
                                                  United States District Judge

Dated: March 29, 2019

---

[7] This includes his federal ADA claim and his state law PWDCRA claim. None of the parties dispute the proposition that the PWDCRA "substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally . . . resolve the plaintiff's PWDCRA claim." *Donald v. Sybra, Inc.*, 667 F.3d 757, 763-64 (6th Cir. 2012) quoting *Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 598 (6th Cir. 2002).